# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Dominick J. Palmer and Paiden Palmer, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.: 2:16-cv-3350-PMD-MGB |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nicholas Santanna and Town of Summerville, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the Court on Plaintiffs Dominick J. Palmer and Paiden Palmer's objections to United States Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R & R") (ECF Nos. 46 & 44). For the reasons stated herein, the Court adopts the R & R, denies Defendants' motion to strike, grants Defendants' motion for summary judgment, and dismisses this case.

## BACKGROUND

The Court adopts the thorough background set forth in the R & R without objection. The Court briefly summarizes that background: On October 5, 2013, Defendant Nicholas Santanna, a detective for the Town of Summerville Police Department, received a call about a drive-by shooting near the Planter's Retreat apartment complex. According to Santanna's investigation, Lamont 'Chaz' Brown was driving a vehicle with John Hilton in the passenger seat when another vehicle pulled up beside them and opened fire, injuring Hilton. Hilton did not initially provide a description of the person who shot him, so Santanna pursued other leads. One lead was an anonymous phone call stating that someone named "D" was bragging to others in Planter's Retreat that he had shot Hilton. The Planter's Retreat office informed Santanna that Dominick Palmer

was known to them as "D." Santanna's leads eventually ran out and he stopped pursing the case until Hilton called him on March 27, 2014. Hilton explained why he changed his mind about assisting the investigation and identified Mr. Palmer as the shooter. Shortly thereafter, Santanna met with Brown. Based on the information he learned from Brown and Hilton, Santanna prepared affidavits for two arrest warrants for Mr. Palmer. A state court magistrate judge agreed that there was probable cause to arrest Mr. Palmer and issued the warrants. Palmer was arrested, but his charges were later dismissed.

## PROCEDURAL HISTORY

On August 22, 2016, Mr. Palmer filed a 42 U.S.C. § 1983 claim of malicious prosecution and Ms. Palmer filed a related claim for loss of consortium. Defendants Santanna and the Town of Summerville[1] filed a motion for summary judgment on June 19, 2017. On August 18, the parties signed a Stipulation of Partial Dismissal, dismissing some defendants and claims. After receiving an extension, Plaintiffs responded to the motion for summary judgment on September 18, Defendants replied on September 25, and Plaintiffs filed a sur-reply on October 17. Defendants moved to strike the sur-reply on October 18. On January 30, 2018, the Magistrate Judge issued her R & R. Plaintiffs objected on February 13, and Defendants responded on February 27. Accordingly, this matter is now ripe for review.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties may make written objections to the R & R within fourteen days after being served with a copy of it. 28 U.S.C. § 636(b)(1). This

---

1. They were joined by additional defendants who have since been dismissed.

Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and it may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id.* Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985). Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **DISCUSSION**

The Magistrate Judge recommends granting Defendants' motion for summary judgment and denying their motion to strike. The parties do not object to the Magistrate Judge's recommendation regarding Defendants' motion to strike. The Court has reviewed that portion of the R & R and, finding no clear error, adopts the recommendation and denies Defendants' motion to strike.

Plaintiffs object to the Magistrate Judge's recommendation that the Court grant Defendants' motion for summary judgment. To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not

3

merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). The Court addresses each objection in turn.

I.  **Failure to Include All Material Facts in the Reconstructed Warrant**

Plaintiffs first object that the Magistrate Judge failed to include all omitted material facts when she reconstructed the warrant as part of the analysis of the malicious prosecution claim against Santanna. To establish malicious prosecution, a plaintiff must show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). The Magistrate Judge found that Mr. Palmer had established that Santanna caused his seizure and that the criminal proceedings terminated in his favor. The parties do not object to these findings. To establish the second element of his malicious prosecution claim, Mr. Palmer must show that Santanna "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit, or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Plaintiffs argue that Santanna deliberately or recklessly omitted material facts in the affidavits he submitted in support of the two warrants to arrest Mr. Palmer.[2] "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the "corrected" warrant affidavit would establish probable cause.'" *Id.* at 628

---

2. These arrest warrants pertain to different charges arising from the October 5, 2013 shooting and include the same supporting information from Santanna. As the Magistrate Judge did in R & R, the Court analyzes them together.

4

(quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). "If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." *Id.* Probable cause exists when "the circumstances within [an] officer's knowledge are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested." *State v. Baccus*, 625 S.E.2d 216, 220 (S.C. 2006).

In her R & R, the Magistrate Judge reconstructed the affidavit with facts Plaintiff claimed were material: that Hilton and Brown initially did not identify the shooter, and that they gave varying descriptions of the shooter's vehicle. The Magistrate Judge concluded that these omissions were not material because the reconstructed warrant affidavit did establish probable cause, and thus she recommended granting summary judgment to Santanna on the malicious prosecution claim.

Plaintiffs object that the Magistrate Judge did not include all the material facts omitted from Santanna's affidavit in the reconstructed affidavit. They argue, for the first time, that the Magistrate Judge failed to include that Santanna did not investigate what type of car Mr. Palmer drove or where he was on October 5, that Santanna did not consider forensic evidence before pursuing the warrants, that Brown and Hilton lack credibility because they did not know Mr. Palmer well and were drunk the night of the shooting, that Hilton only identified Mr. Palmer after there were rumors that he was the shooter, and that Brown had heard that someone named "D" *or his little brother* committed the shooting. The Magistrate Judge did not include these circumstances in the reconstructed affidavit because Plaintiffs did not include them in their list of allegedly material omissions. Nonetheless, the Court addresses each in turn. *See Walker v. Griswold*, No.: 8:16-cv-814-JMC, 2017 WL 4324844, at *3–4 (D.S.C. Sept. 29, 2017) (finding an

5

obligation to address arguments relating to a § 1983 claim even though they were not presented to the magistrate judge).

The Court finds that it would be inappropriate to reconstruct the affidavit to include that Santanna did not investigate what kind of car Mr. Palmer drove, had not asked Mr. Palmer about his whereabouts on October 5, and did not consider the forensic evidence before pursuing the warrants. "Reasonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir.1991)) (finding an officer acted reasonably in obtaining a warrant for forgery even though he did not ask the person whose signature was possibly forged if he had signed the check in question). Thus, Santanna did not have an obligation to try to speak to Mr. Palmer before submitting his affidavit. Even still, Santanna left his card on Mr. Palmer's door after learning from the Planter's Retreat office staff that Mr. Palmer was known to them as "D," but he never heard from him. Moreover, officers are "[not] required to disclose all of the voluminous and possibly exculpatory information known to them in a warrant application." *Bernstein v. United States*, 990 F. Supp. 428, 438 (D.S.C. 1997) (finding probable cause was established despite the fact that the government did not investigate the history of the informant before it obtained a search warrant). Thus, even if Santanna had learned Mr. Palmer typically drove a particular car or said he was somewhere else on October 5, or that the forensic information revealed ambiguities, Santanna would not have been obligated to include that information in the affidavit. The Court finds that Santanna did not make a material omission by failing to include that he had not spoken to Mr. Palmer, did not investigate what car he drove, and did not consider forensic evidence.

Next, Plaintiffs argue that the reconstructed affidavit should include that Hilton and Brown lack credibility because Hilton did not know Mr. Palmer well and because they were drunk on the night of the shooting. The Magistrate Judge addressed Plaintiffs' allegation that Santanna knew Hilton and Brown were untruthful and explained that she found no evidence in the record to support that allegation. The Court has also not found any evidence that Santanna had a reason to question Hilton and Brown's credibility. There is also no evidence supporting Plaintiffs' claim that Hilton barely knew Mr. Palmer. In fact, the complaint explains that Hilton told Santanna he knew Mr. Palmer from living in Planter's Retreat. Santanna has provided the same explanation. In any event, there is no indication that this would alter the finding of probable cause, given that Hilton positively identified Mr. Palmer from a photo lineup. *See Torchinsky*, 942 F.2d at 262 ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker."); *Lallemand v. Univ. of R.I.*, 9 F.3d 214, 215–17 (1st Cir. 1996) (finding probable cause to arrest a suspect based on a victim's identification from a photo identification, despite that the victim provided the wrong name for the suspect and a physical description that did not accurately describe him). Regarding Hilton and Brown's alleged drunkenness, only Brown stated that he was drunk that night. Including this detail in the reconstructed affidavit does not defeat probable cause. *See Lallemand*, 9 F.3d at 216 (explaining that while drunkenness can affect a witness's credibility, the disclosure that the victim was drinking "would not in any way have undercut probable cause" given that she positively identified the suspect in a photo array).

Finally, Plaintiffs allege that the reconstructed warrant should have included that Hilton identified Mr. Palmer only after he heard rumors that he was the shooter, and that the rumor Brown described to Santanna was that someone named "D" *or his little brother* shot Hilton. As the Court

7

explained above, Santanna was not obligated to include every bit of possibly exculpatory information in his warrant affidavit. *Bernstein*, 990 F. Supp. at 438. Further, the Court finds that including this information would not defeat probable cause in light of Hilton's unequivocal identification of Mr. Palmer. *See Torchinsky*, 942 F.2d at 262. Consequently, the Court grants summary judgment in favor of Santanna on the malicious prosecution claim.

## II. Qualified Immunity

Plaintiffs' next objection is that the Magistrate Judge erred in finding that Santanna was entitled to qualified immunity because his conclusion that there was probable cause to arrest Mr. Palmer was reasonable, even if it was mistaken (though it was not, in the opinion of the Magistrate Judge and this Court). *See Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012) ("[E]ven if the existence of probable cause were a close question, the 'qualified immunity standard gives ample room for mistaken judgments.'" ) (quoting *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011)). Plaintiffs do not present an argument for why this conclusion was in error, but instead state in a conclusory fashion that the record shows Santanna was not reasonable and that he is not entitled to qualified immunity. This is not a proper objection. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("[D]e novo review [is] unnecessary . . . when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."). The Court finds no error with the Magistrate Judge's conclusion that Santanna is entitled to qualified immunity.

## III. Failure to View Facts in the Light Most Favorable to Plaintiffs

Plaintiffs argue that while the Magistrate Judge properly stated that she must view the facts in the light most favorable to them, she did not actually do that. However, they do not point to a particular place in the R & R where the Magistrate Judge looked at conflicting versions of the facts

and then relied on the version that was favorable to Defendants. Rather, they make the conclusory assertion that if their evidence is believed, then Santanna should have known his omissions were material and that they would negate probable cause. This is also not a proper objection. *Id.*

## IV. Mr. Palmer's Claim Against Summerville

Plaintiffs also argue that the Magistrate Judge erred in finding that the Town of Summerville could not be held liable for Santanna's actions leading to Mr. Palmer's arrest. The Magistrate Judge found that Summerville was not liable based on a municipal policy or custom, a failure to train Santanna, or a failure to supervise him. Plaintiffs' objection generally re-hashes arguments they made to the Magistrate Judge and thus it is not a proper objection. *Anderson v. Dobson*, 627 F. Supp. 2d 619, 623 (W.D.N.C. 2007) ("An 'objection' that . . . simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). Plaintiffs' most specific objection is that the Magistrate Judge improperly favored Santanna's training log over the opinion of their expert in finding that Summerville was not liable for a failure to train Santanna. "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The Supreme Court further explained, "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Id.* at 388–89 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–484 (1986) (plurality opinion)). Plaintiffs' expert opined,

> The Summerville Police Department showed a deliberate indifference to acceptable law enforcement standards with regard to the training and supervision of Det. Santanna. Nowhere does there appear to be any supervisor involvement or supervision of Det. Santanna and the investigation. This failure alone is a gross deviation from acceptable standards of law enforcement practices, management, and supervision.

9

(Sur-Reply, Ex. 1, Aff. of John O'Leary, ECF No. 38-1, at 11.) First, as explained by the Magistrate Judge, the expert opinion conflates a failure to train and a failure to supervise. With respect to a failure to train claim, neither Plaintiffs nor their expert point to any particular choice that Summerville policymakers made that reflects deliberate indifference to the rights of those who interact with Summerville police officers. *See Harris*, 489 U.S. at 388–89. With respect to a failure to supervise, Plaintiffs have not shown the "history of widespread abuse" necessary to establish that claim. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). Moreover, the Magistrate Judge did not favor Defendants' evidence of Santanna's training as shown in his training log over the opinion of Plaintiffs' expert. These items do not present contradictory facts, and the Magistrate Judge explained why she did not agree with the expert's legal conclusions. The Court agrees with the Magistrate Judge that Summerville is not liable under any of Plaintiffs' theories. The Court grants summary judgment in favor of Summerville on this claim.

## V.     Loss of Consortium

Finally, Plaintiffs object that the Magistrate Judge did not properly analyze Ms. Palmer's loss of consortium claim because she only examined Santanna's actions leading to Mr. Palmer's arrest, and did not examine Santanna and the Town of Summerville's failure to further investigate the October 5 shooting while he was detained. The Court finds that this objection mischaracterizes the Magistrate Judge's analysis. With respect to Santanna, the Magistrate Judge explained that, under the South Carolina Tort Claims Act ("SCTCA"), he could only be found liable if he was acting outside the scope of his official duties or if his conduct "constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15–78–70(b). As the Magistrate Judge explained, Santanna's actions do not rise to that level. The Court agrees. As discussed above, Santanna reasonably believed there was probable cause to arrest Mr. Palmer. His

failure to further investigate the crime while Mr. Palmer was in jail was an action within the scope of his official duties, and there is no evidence that it was motivated by an intent to harm Mr. Palmer. Santanna's failure to investigate was at most negligent, but that does not subject him to liability. *See Faile v. S.C. Dep't of Juvenile Justice*, 566 S.E.2d 536, 539 n.1 (S.C. 2002) ("When a plaintiff claims an employee of a state agency acted negligently in the performance of his job, the South Carolina Tort Claims Act requires a plaintiff to sue the agency for which an employee works, rather than suing the employee directly." (citing S.C. Code Ann. § 15-78-70(c))). Accordingly, the Court grants summary judgment to Santanna on Ms. Palmer's loss of consortium claim.

As the Magistrate Judge explained, the Town of Summerville is immune from liability on this claim because the SCTCA provides that a "governmental entity is not liable for a loss resulting from . . . institution or prosecution of any judicial or administrative proceeding." S.C. Code Ann. § 15–78–60(23); *see McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 567 & n.10 (D.S.C. 2013) (concluding the City of Columbia was immune from liability for the plaintiff's malicious prosecution claim under § 15-78-60(23)). While the Court recognizes that Plaintiffs experienced significant consequences as a result of Mr. Palmer's arrest and detention, the Defendants are nonetheless immune from suit for Ms. Palmer's loss of consortium claim. The Court grants summary judgment in favor of the Defendants on this claim.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' objections are **OVERRULED** and that the R & R is **ADOPTED**. The Court **DENIES** Defendants' motion to strike and **GRANTS** their motion for summary judgment. The action is **DISMISSED**.

**AND IT IS SO ORDERED.**

                                              PATRICK MICHAEL DUFFY
                                              United States District Judge

**March 27, 2018**
**Charleston, South Carolina**